IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. _____

ANTONIO BRYANT

      Plaintiff,

Vs.

NATIONAL FOOTBALL LEAGUE, INC.

      and

NATIONAL FOOTBALL LEAGUE MANAGEMENT COUNCIL

      Defendants.

---

## COMPLAINT for TORTIOUS INTERFERENCE WITH PRESENT AND FUTURE BUSINESS CONTRACTS, FRAUD, DECEIT, SEVERE EMOTIONAL DISTRESS, FALSE IMPRISONMENT, and DECLARATORY JUDGMENT

---

Plaintiff **Antonio Bryant**, by and through his counsel, Peter Schaffer, files this complaint for a temporary restraining order, declaratory judgment, injunctions, attorney's fees and damages:

### Jurisdiction and Venue

1.    This Court has personal jurisdiction over the claims for Relief set forth herein pursuant to the National Football League's purposeful direction of correspondences to Antonio Bryant, relative to this action, into Colorado.

2.    This Court has personal jurisdiction over the parties because the NFL has purposefully availed itself of this venue by and through its acts and correspondence regarding Antonio Bryant hearings and appeals and because

Antonio Bryant willingly conducts business with and through his contacts in the state of Colorado.

3.     This Court has personal jurisdiction over the NFL because the NFL purposefully directed this action into Colorado by allowing appeals under its grievance procedure to emanate from Colorado.

4.     This Court has specific jurisdiction pursuant to *Perkins v. Benguet Consol. Min. Co.*, 342 U.S. 437 (U.S. 1952) and general jurisdiction pursuant to *McGee v. International Life Ins. Co.*, 355 U.S. 220 (U.S. 1957) over the NFL because, as one of the states with an NFL franchise, the NFL purposefully directs and avails itself of the benefit of Colorado in the form of systematic and continuous contacts including, but not limited to: (1) direct marketing and promotion; (2) direct sales and distribution of products; (3) franchising and partnership with the Denver Broncos; (4) direct advertising sales; (5) mandating, and enforcing, contractual relationships with "players"; (6) selling the NFL television network and packages to, and through, Colorado providers; (7) conducting hearings regarding disputes over the National Football League Policy and Program for Substances of Abuse (NFLPPSA); and (8) conducting hearings regarding disputes governed by the National Football League Collective Bargaining Agreement (CBA).

5.     This Court has specific jurisdiction pursuant to *Perkins* because this cause of action is related to application of the NFLPPSA contract and application of the CBA that applies to all NFL "players", including those domiciled in, and currently residents of, Colorado.

6.     Diversity of citizenship is complete and total pursuant to 28 U.S.C. 1332(a)(1) because the National Football League Management Council ("NFL Management Council") is an association with its principal place of business in New York, New York and the NFL Management Council is the sole and exclusive bargaining representative of present and future employer member clubs of the NFL and because National Football League, Inc. (NFL Management Council and NFL, Inc. heretofore collectively referred to as "NFL") has its principal place of business located at 280 Park Avenue, New York, New York 10017-1206 making it a citizen of New York in accordance with 28 U.S.C. § 1332(c)(1), and because upon information and belief, Antonio Bryant is a resident of, and domiciled in, Texas. This court has original jurisdiction over this matter pursuant to 28 U.S.C § 1332(a) because the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

7.     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that fundamental claims arise which present a federal question with regard to the definition of an "employee" as defined by 42 U.S.C.A. § 12111(4) in that the NFL is discriminating against a disabled former employee as though he were a current employee, and the public interest weighs heavily in favor of maintaining citizens' rights' to privacy over the NFL's desire to illegally and falsely enforce discipline upon a non-employee and non-union member.

8.     Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391(a)(2) because a substantial portion of the events regarding the claim occurred within this jurisdiction.

9.     Pursuant to 28 U.S.C. § 1393(c) venue is proper because the NFL has contacts with Colorado sufficient to establish personal jurisdiction.

10.     Relief is also sought under 28 U.S.C. §§ 2201 and 2202 which grants that any district court within the United States may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought, and grant necessary and proper relief if so decided.

**PARTIES**

11.     Named Plaintiff Antonio Bryant is a citizen of the United States, and a resident of the state of Texas. On March 1, 2007 Mr. Bryant had his contract terminated by the Defendants and its league member the San Francisco 49'ers. Accordingly, Mr. Bryant is not presently a player, an employee of the NFL or any NFL franchise, and is also not a member of the National Football League Player's Association (NFLPA) union,[1] which union represents "players". Throughout his entire NFL career, Mr. Bryant's business practice has been managed from Denver, Colorado.

12.     The Defendants are the National Football League, Inc., The NFL Management Council and NFL, Inc. (heretofore collectively referred to as "NFL") and who upon information and belief has its principal place of business located at 280 Park Avenue, The NFL, is the sole and exclusive bargaining representative of present and future employer member clubs of the NFL and NFL, Inc., the

---

[1] An individual becomes a member of the National Football League Player's Association union by signing an NFL Player Contract and paying dues therefrom. When this contract is terminated, and no dues are paid, this individual is no longer a member of the union. Further, when a player is released from his NFL contract he no longer receives the same benefits that a player under contract receives from the NFLPA.

largest and most prestigious professional sports leagues in the world, with 32 franchises distributed across the United States. Revenue for the NFL is projected to be close to $7,000,000,000.00 in 2007.[2]

**BACKGROUND**

13.    The issue in this Complaint is rooted in the DEFENDANT's arbitrary, capricious, negligent and improper imposition of the NFLPPSA and CBA, which applies only to active "players" employed by defendant and its member clubs , upon individuals that are not players in the NFL and that are not members of the NFLPA.

14.    Upon having his contract terminated, Antonio Bryant did not pursue additional employment with an NFL team as evidenced by his not accepting any offers to sign an NFL Player Contract for employment in the pre-season or in the regular season.[3]

15.    However the Defendants continued to mandate, force, manipulate and coerce Mr. Bryant to continue to submit himself to random urine analysis tests from the period of his contract termination up and until September of 2007 when he flatly refused to submit to such tests any more.

16.    The Defendants forced Mr. Bryant to submit to these tests, though not employed by the Defendants or under contract with the Defendants or any of its member teams, under threat of significant financial punishments and suspension sanctions.

---

[2] Salary Cap FAQ, askthecommish.com, (retrieved July 18, 2007).
[3] The NFL's pre-season camps commence in late July of 2007 and the regular NFL season commenced the first weekend of September 2007.

17.    The CBA applies exclusively to active NFL "players" as evidenced by the express language of the governing contract:

(a) Article II, GOVERNING AGREEMENT, Sec. 1, Conflicts:

"The Provisions of this Agreement supersede any conflicting provisions in the NFL Player Contract, the NFL Constitution and Bylaws, or any other document affecting terms and conditions of employment of NFL players, and all *players*, Clubs, the NFLPA, the NFL, and the Management Council will be bound hereby."[4]

(b) Article I, DEFINITIONS, Sec. 2(y), Player Contract:

"'Player Contract' means a written agreement or series of such agreements executed at or about the same time between a person and an NFL Club pursuant to which such person is employed by such Club as a professional football *player*."[5] (Emphasis added)

18.    Further, the NFLPPSA applies exclusively and only to individuals under obligation to the terms of an NFL Player Contract and not to players who contracts have expired or have been terminated as evidenced by the express language of the governing document:

(a) General Policy:

"This policy and its terms shall be binding on all NFL clubs and shall constitute the sole and exclusive means by which *players* will be tested or referred for treatment, and as to those *players* having problems with substances of abuse, the sole and exclusive means by which they will gain access to the benefits of this Policy."[6]

---

[4] *NFL: Collective Bargaining Agreement*, GOVERNING AGREEMENT, Art. II, Sec. 1, p. 8 (Mar. 8, 2006).
[5] *NFL: Collective Bargaining Agreement*, DEFINITIONS, Art. I, Sec. 2(y), p. 5 (Mar. 8, 2006).
[6] *National Football League Policy and Program for Substances of Abuse,* General Policy, p. 1 (May 1, 2006).

(b) Article I(c)(1)(d), Testing by Agreement:

> "An NFL club and *player* may agree that such *player* will submit to unannounced Testing during the term of said *player's* NFL *Player* Contract provided that the club has a reasonable basis for requesting such agreement."[7]

19.     As evidenced by the express language of the governing contract, the CBA defines a player as an individual that is signed to an NFL Player Contract. Only "players" are "bound" to the CBA. NFL Player Contracts are the documents that make an individual a professional football "player." Antonio Bryant has not been under obligation to an NFL Player Contract since his NFL Player Contract was terminated on March 1, 2007. Accordingly, Antonio Bryant is not a "player" in the NFL, not under contact to the NFL or any of its member teams, not an employee of the NFL or any of its member teams and not a member of the NFLPA.

20.     Further, the express language of the governing agreement, clearly defines that the NFLPPSA applies to "players" only "during the term of said NFL Player Contract." Even though Mr. Bryant's NFL Player Contract "term" was terminated on March 1, 2007, the DEFENDANT continues to attempt to randomly mandate that Mr. Bryant submit to random urine analysis testing in accordance with the NFLPPSA.

21.     After March 1, 2007 the DEFENDANT and its member clubs have been on actual and constructive notice of Antonio Bryant's status as an unemployed athlete not seeking gainful employment with the NFL as evidenced, but not limited by, the following facts: (1) the DEFENDANT listed Mr. Bryant's

---

[7] *Id.* at Testing by Agreement, I(c)(1)(d), p. 8 (May 1, 2006).

name on numerous free agent lists; (2) Mr. Bryant has not paid union dues over this period of time, has not been a member of the NFLPA since the date of the contract termination and has not received any benefits from the NFLPA since that date; (3) Mr. Bryant has not participated in any activity sponsored by the NFL; (4) Mr. Bryant has not received a check from the NFL or an NFL club; (5) Mr. Bryant does not have a contract with an NFL team; (6) Mr. Bryant had his player contract terminated by the San Francisco 49'ers on March 1, 2007; (7) the DEFENDANT continues to attempt tomandate that Mr. Bryant submit to random urine analysis testing even though they have been put on notice of his refusal to presently cooperate; and (8) the DEFENDANT has threatened NFL clubs, and continues to threaten NFL clubs, that it will suspend Antonio Bryant if a team signs him, thus admitting Mr. Bryant is not currently subject to NFL rules, policies and regulations as evidenced by the fact the DEFENDANT is presently unable to take disciplinary action.

22.   Even though the DEFENDANT has actual and constructive knowledge of the fact Mr. Bryant has not been obligated to an NFL Player Contract since March 1, 2007 and has actual and constructive knowledge of the fact that Mr. Bryant was not seeking employment with the NFL or an NFL club from March 1, 2007 until the present; the DEFENDANT sent threatening letters to Mr. Bryant on September 12th, September 18th and September 26th, 2007,[8] stating that he was "obligated by the terms of the National Football League Policy and Program for Substances of Abuse,"[9] that he had "failed to cooperate fully

---

[8] Exhibits A, B and C.
[9] *Id.*

with testing,"[10] and that "this type of behavior would subject [him] to discipline equivalent to a positive test."[11]

23.     This coercive and threatening behavior is anchored in the fraudulent representation by the DEFENDANT that Antonio Bryant is currently obligated to comply with the terms of the CBA and the NFLPPSA.

24.     These letters created an environment of fear and angst for Mr. Bryant in that the DEFENDANT led him to reasonably believe that: (1) he had a legal obligation to provide the requested samples; (2) his failure to comply would prevent him from eventually being able to seek gainful employment from the NFL or one of its member clubs; (3) the DEFENDANT had a legal foundation to impose disciplinary action; (4) the DEFENDANT had a legal foundation to threaten future disciplinary action; (5) the DEFENDANT had a legal right to share his confidential medical information; (6) the DEFENDANT had a legal right to confine him without his consent; (7) the DEFENDANT had a legal right to invade his privacy; (8) the DEFENDANT had a legal right harass and threaten potential future employers; (9) the DEFENDANT had a legal right to continue to harass Mr. Bryant. As a result, Mr. Bryant submitted to tests that he now knows to have been procured under false and illegal pretenses.

25.     Further, although the DEFENDANT has actual and constructive knowledge of the fact Antonio Bryant is not under obligation to an NFL Player Contract and that Mr. Bryant was not actively seeking employment with an NFL team, the DEFENDANT has called potential future-employers (NFL clubs) of Mr.

---

[10] *Id.*
[11] *Id.*

Bryant and threatened to suspend him should to a sign him to an NFL player contract.

26.     In placing these calls the DEFENDANT is sharing Mr. Bryant's confidential medical information, obtained fraudulently, with third parties. Further, the DEFENDANT is fraudulently representing that it has a right to use this information against Mr. Bryant in future actions.

27.     The DEFENDANT's currenttortious tortious interference with Mr. Bryant's employment contract, tortioustortious interference with a business contract, tortioustortious interference with a prospective contract,   tortious interference with a prospective business relationship, fraud, false imprisonment and invasion of privacy, resulting from the illegal imposition of the CBA and the NFLPPSA with regard to Mr. Bryant has caused irreparable harm as a result of the DEFENDANT: (1) using the results of drug and alcohol tests fraudulently procured from Mr. Bryant while he was not under obligation to an NFL Player Contract to tortiously interfere with business and contractual relationships; (2) falsely administering drug and alcohol tests; (3) sharing Mr. Bryant's private medical information with the public; (4) fraudulently threatening Mr. Bryant with discipline; and (5) threatening future-employers with the imminent suspension of Mr. Bryant.

**FIRST CLAIM FOR RELIEF**
**(Tortious Interference with a Prospective Contractual Relationship)**

28.     Named Plaintiff, Antonio Bryant, incorporates and realleges by reference the foregoing paragraphs 1 through 286, as if they were fully set forth herein.

29.   The DEFENDANT has tortiously interfered with a prospective contractual relationship for Mr. Bryant.

30.   The DEFENDANT intentionally interfered with Mr. Bryant's prospective contractual relationship by fraudulently threatening potential future employers.

31.   The DEFENDANT improperly interfered with Mr. Bryant's prospective contractual relations in that Mr. Bryant was not subject to NFL rules, polices and regulations and the DEFENDANT had actual and constructive notice that Mr. Bryant was not subject to NFL rules, polices and regulations, yet the DEFENDANT continued to interfere with Mr. Bryant's prospective contractual relations in the form of threatening calls made to prospective employers of Mr. Bryant that are preventing Mr. Bryant from being able to seek an NFL Player Contract.

32.   In this case, NFL clubs are third parties that are being induced not to enter into or continue prospective relations in the form of NFL Player Contract negotiations with Mr. Bryant.

33.   Accordingly, the DEFENDANT is preventing Mr. Bryant from being able to enter into NFL Player Contract negotiations with NFL clubs.

34.   This interference has irreparably harmed Mr. Bryant and resulted in the loss of future salary earnings, loss of future contract negotiation leverage and therefore contract value, immeasurable loss of off-the-field marketability and ability to capitalize on maximal endorsement value, immeasurable loss to

reputation and character and immeasurable pain and suffering as a result of the mental distress this has caused and will cause.

## SECOND CLAIM FOR RELIEF
### (Tortious Interference with a Prospective Business Relationship)

35.     Named Plaintiff, Antonio Bryant, incorporates and realleges by reference the foregoing paragraphs 1 through 343, as if they were fully set forth herein.

36.     the DEFENDANT has tortiously interfered with a prospective business relationship for Mr. Bryant.

37.     The DEFENDANT intentionally interfered with Mr. Bryant's prospective contractual relationship by wrongfully threatening potential business relations.

38.     The DEFENDANT improperly interfered with Mr. Bryant's prospective business relations in that Mr. Bryant was not obligated to NFL rules, polices and regulations and the NFL had actual and constructive notice that Mr. Bryant was not subject to NFL rules, polices and regulations, yet the DEFENDANT continued to interfere with Mr. Bryant's prospective business relations in the form of threatening calls made to prospective employers of Mr. Bryant that are preventing Mr. Bryant from being able to seek an NFL Player Contract.

39.     Accordingly, the DEFENDANT has prevented Mr. Bryant from being able to create a business relation that would eventually enable him to sign an NFL Player Contract with an NFL club.

40.     This interference has irreparably harmed Mr. Bryant and resulted in the loss of future salary earnings, loss of future contract negotiation leverage and therefore contract value, immeasurable loss of off-the-field marketability and ability to capitalize on maximal endorsement value, immeasurable loss to reputation and character and immeasurable pain and suffering as a result of the mental distress this has caused and will cause.

## THIRD CLAIM FOR RELIEF
## (Tortious Interference with a Contractual Relationship)

41.     Named Plaintiff, Antonio Bryant, incorporates and realleges by reference the foregoing paragraphs 1 through 39, as if they were fully set forth herein.

42.     Pursuant to *Employment Television Enters., LLC v. Barocas*, 100 P.3d 37 (Colo.App. 2004), the DEFENDANT has tortiously interfered with a contractual relationship for Mr. Bryant.

43.     The DEFENDANT intentionally tortiously interfered with Mr. Bryant's current contractual relationship by wrongfully threatening potential future employers.

44.     Mr. Bryant is currently represented by All Pro Sports and Entertainment. All Pro Sports and Entertainment is presently unable to seek employment for Mr. Bryant in that the DEFENDANT is presently interfering with All Pro Sports and Entertainment's ability to seek employment for Mr. Bryant in that the DEFENDANT is wrongfully threatening potential future employers, therefore making All Pro Sports and Entertainment's contractual role as an agent irrelevant.

45.     The DEFENDANT improperly interfered with Mr. Bryant's prospective and current contractual relations in that Mr. Bryant was not obligated to NFL rules, polices and regulations and the DEFENDANT had actual and constructive notice that Mr. Bryant was not subject to NFL rules, polices and regulations yet the DEFENDANT continued to interfere with Mr. Bryant's contractual relations in the form of threatening calls made to prospective employers of Mr. Bryant that are preventing All Pro Sports and Entertainment from being able to seek an NFL Player Contract on behalf of Mr. Bryant.

46.     All Pro Sport and Entertainment is a third party that is being induced not to enter into or continue prospective relations in the form of seeking an NFL Player Contract on behalf of Mr. Bryant.

47.     Accordingly, the DEFENDANT is preventing Mr. Bryant from being able to enter into NFL Player Contract negotiations with NFL clubs by interfering with his contractual relations with All Pro Sports and Entertainment.

48.     This interference has irreparably harmed Mr. Bryant and resulted in the loss of future salary earnings, loss of future contract negotiation leverage and therefore contract value, immeasurable loss of off-the-field marketability and ability to capitalize on maximal endorsement value, immeasurable loss to reputation and character and immeasurable pain and suffering as a result of the mental distress this has caused and will cause.

**FOURTH CLAIM FOR RELIEF**
**(Tortious Interference with a Prospective Business Relationship)**

49.    Named Plaintiff, Antonio Bryant, incorporates and realleges by reference the foregoing paragraphs 1 through 48, as if they were fully set forth herein.

50.    The DEFENDANT has tortiously interfered with a prospective business relationship for Mr. Bryant.

51.    The DEFENDANT intentionally and tortiously interfered with Mr. Bryant's current business relationship by wrongfully threatening potential future employers.

52.    Mr. Bryant is currently represented by All Pro Sports and Entertainment. All Pro Sports and Entertainment is presently unable to seek employment for Mr. Bryant in that the DEFENDANT is presently interfering with All Pro Sports and Entertainment's ability to seek employment for Mr. Bryant in that the DEFENDANT is wrongfully threatening potential future employers, therefore making All Pro Sports and Entertainment's business role as an agent irrelevant.

53.    The DEFENDANT improperly interfered with Mr. Bryant's prospective and current business relations in that Mr. Bryant was not obligated to NFL rules, polices and regulations and the DEFENDANT had actual and constructive notice that Mr. Bryant was not subject to NFL rules, polices and regulations yet the DEFENDANT continued to interfere with Mr. Bryant's business relations in the form of threatening calls made to prospective employers of Mr. Bryant that are preventing All Pro Sports and Entertainment from being able to seek an NFL Player Contract on behalf of Mr. Bryant.

54.     All Pro Sport and Entertainment is a third party that is being induced not to enter into or continue relations in the form of seeking an NFL Player Contract on behalf of Mr. Bryant.

55.     Accordingly, the DEFENDANT is preventing Mr. Bryant from being able to enter into NFL Player Contract negotiations with NFL clubs by interfering with his business relations with All Pro Sports and Entertainment.

56.     This interference has irreparably harmed Mr. Bryant and resulted in the loss of future salary earnings, loss of future contract negotiation leverage and therefore contract value, immeasurable loss of off-the-field marketability and ability to capitalize on maximal endorsement value, immeasurable loss to reputation and character and immeasurable pain and suffering as a result of the mental distress this has caused and will cause.

**FIFTH CLAIM FOR RELIEF**
**(Violation of Right of Privacy: Intrusion Upon Seclusion and Private Affairs)**

57.     Named Plaintiff, Antonio Bryant, incorporates and realleges by reference the foregoing paragraphs 1 through 56, as if they were fully set forth herein.

58.     Defendant has violated Mr. Bryant's privacy in the form of an intrusion upon his solitude, seclusion and private affairs as evidenced by the completeness of the facts argued herein.

59.     The DEFENDANT intentionally invaded upon Mr. Bryant's solitude, seclusion and private affairs as they had actual and constructive notice that Mr. Bryant was not a current employee of the NFL or an NFL member club yet

proceeded to unduly influence and fraudulently procure drug and alcohol tests from him.

60.    Any reasonable person would consider the DEFENDANT's intrusion into Mr. Bryant's solitude, seclusion and private affairs to be highly offensive.

61.    Because Mr. Bryant is not a player and is not subject to the NFLPPSA or the CBA this invasion was completely unjustified and unwarranted and this intrusion was reasonably offensive and reasonably objectionable to Mr. Bryant.

62.    The DEFENDANT's threat of future discipline, used to induce Mr. Bryant to participate in testing, was completely unjustified, unwarranted, offensive and objectionable.

63.    The DEFENDANT's fraudulent obtainment of drug and alcohol tests from Mr. Bryant, is resulting is severe and irreparable injury in the form of the loss of future salary earnings, loss of future contract negotiation leverage and therefore contract value, immeasurable loss of off-the-field marketability and ability to capitalize on maximal endorsement value, immeasurable loss to reputation and character and immeasurable pain and suffering as a result of the mental distress this has caused and will cause.

## SIXTH CLAIM FOR RELIEF
### (Violation of Right of Privacy: Public Disclosure of Private Facts)

64.    Named Plaintiff, Antonio Bryant, incorporates and realleges by reference the foregoing paragraphs 1 through 62, as if they were fully set forth herein.

65.     Pursuant to *Doe v. High-Tech Institute, Inc.*, 972 P.2d 1060, 1065 (Colo.App. 1998) Mr. Bryant had his privacy invaded in the form of the public disclosure of private facts as evidenced by the completeness of the facts argued herein.

66.     The DEFENDANT knowingly publicized facts regarding Mr. Bryant's private life even though they had actual and constructive notice that Mr. Bryant was not a player and not a current employee of the NFL or an NFL member club, even though this information was obtained through the use of undue influence in the form of fraudulently procured drug and alcohol tests and even though this fact was private in nature.

67.     The DEFENDANT disclosed this fact to the public in the form of sharing this private fact with NFL clubs.

68.     The disclosure of this fact to NFL member clubs is highly offensive to Mr. Bryant, and to any reasonable person of ordinary sensibilities.

69.     Further, the disclosure of this fact held no valid or legitimate concern to the public in that disclosure was used for the sole purpose of intimidating and coercing potential future employers into avoiding hiring Mr. Bryant in the future.

70.     This fact was disclosed with reckless disregard for the private nature of this fact.

71.     The DEFENDANT's utilization of the information, obtained through the admission of fraudulently induced drug and alcohol tests from Mr. Bryant, is resulting is severe and unrecoverable injury in the form of the loss of future

salary earnings, loss of future contract negotiation leverage and therefore contract value, immeasurable loss of off-the-field marketability and ability to capitalize on maximal endorsement value, immeasurable loss to reputation and character and immeasurable pain and suffering as a result of the mental distress this has caused and will cause.

## SIXTH CLAIM FOR RELIEF
### (Intentional Infliction of Emotional Distress)

72.    Named Plaintiff, Antonio Bryant, incorporates and realleges by reference the foregoing paragraphs 1 through 70, as if they were fully set forth herein.

73.    Pursuant to *Coors Brewing Co. v. Floyd*, 978 P.2d 663 (Colo. 1999), the DEFENDANT has intentionally inflicted severe emotional distress upon Mr. Bryant.

74.    The DEFENDANT engaged in extreme and outrageous conduct when they publicized information regarding Mr. Bryant's private life even though they had actual and constructive notice that Mr. Bryant was not a player and not a current employee of the NFL or an NFL member club, and even though this information was obtained through the use of undue influence in the form of fraudulently obtained drug and alcohol tests.

75.    The conduct of the DEFENDANT with regard to this action is extreme and outrageous in that they knowingly shared Mr. Bryant's private medical information even though he was not a "player" or an NFL employee, and he was not seeking employment.

76.     The DEFENDANT's action is extreme and outrageous in that they fraudulently procured information through the use of undue influence and duress, then shared that information with NFL member clubs in an effort to intimidate and coerce the member clubs to avoid the future hiring of Antonio Bryant should he choose to make himself eligible to participate in NFL football again.

77.     The DEFENDANT's actions have caused Mr. Bryant severe emotional distress that is certain to require medical attention.

78.     The DEFENDANT's utilization of the information, obtained through the admission of fraudulently induced drug and alcohol tests from Mr. Bryant, is resulting is severe and unrecoverable injury in the form of the loss of future salary earnings, loss of future contract negotiation leverage and therefore contract value, immeasurable loss of off-the-field marketability and ability to capitalize on maximal endorsement value, immeasurable loss to reputation and character and immeasurable pain and suffering as a result of the mental distress this has caused and will cause.

## SEVENTH CLAIM FOR RELIEF
### (Deceit based on Fraud)

79.     Named Plaintiff, Antonio Bryant, incorporates and realleges by reference the foregoing paragraphs 1 through 77, as if they were fully set forth herein.

80.     DEFENDANT has deceived Mr. Bryant based on fraudulent procurement of drug tests when the DEFENDANT knew he was not a player or employed by the NFL or an NFL member club.

81.    The DEFENDANT falsely represented a fact in that they convinced Mr. Bryant he was subject the NFLPPSA and CBA.

82.    The fact was material in that, should Mr. Bryant have refused the tests, he would not be subjected to this current litigation and the significant damages resulting therefrom.

83.    The DEFENDANT knew that they had falsely represented this fact to Mr. Bryant as they knew he was not a current NFL employee nor was he seeking employment with the NFL.

84.    The DEFENDANT made this false representation with the intent that Mr. Bryant rely upon it.

85.    The nature of the relationship between Mr. Bryant and the DEFENDANT is such that Mr. Bryant reasonably relied upon the fact because the DEFENDANT sent threatening letters and threatened teams that they would suspend him should they choose to hire him.

86.    Mr. Bryant's reliance was justified in that he reasonably believed it would affect his ability to pursue a career in football should he choose to do so.

87.    The DEFENDANT had the opportunity to exert this influence, and exerted this influence, as evidenced, but not limited by: (1) their sending drug testing agents to Mr. Bryant's home even though he was not a player or an employee of the NFL or an NFL club; (2) their sending threatening letters to Mr. Bryant; and (3) their calling NFL teams with the threat that Mr. Bryant would be suspended should they sign him.

88.     The DEFENDANT's sharing of Mr. Bryant's drug and alcohol test results, obtained through deceit based on fraud, has caused severe and unrecoverable injury in the form of the loss of future salary earnings, loss of future contract negotiation leverage and therefore contract value, immeasurable loss of off-the-field marketability and ability to capitalize on maximal endorsement value, immeasurable loss to reputation and character and immeasurable pain and suffering as a result of the mental distress this has caused and will cause.

## EIGHTH CLAIM FOR RELIEF
## (False Imprisonment)

89.     Named Plaintiff, Antonio Bryant, incorporates and realleges by reference the foregoing paragraphs 1 through 88, as if they were fully set forth herein.

90.     DEFENDANT falsely imprisoned Mr. Bryant when administering these tests under an environment of improper threat.

91.     Here, the DEFENDANT through its agents, intended to restrict Mr. Bryant in a confined area until he submitted to a drug and alcohol test under the threat of his facing disciplinary action should he not comply.

92.     The DEFENDANT restricted Mr. Bryant's movement until this test was procured.

93.     Mr. Bryant was aware that his movement was restricted.

## NINTH CLAIM FOR RELIEF
## (Declaratory Judgment)

94.   Named Plaintiff, Antonio Bryant, incorporates and realleges by reference the foregoing paragraphs 1 through 92 as if they were fully set forth herein.

95.   In accordance with Federal Rules of Civil Procedure 57 and pursuant to 28 U.S.C. § 2201, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration.

96.   The nature of this action is such that a declaratory judgment will adequately relieve the parties existing controversy.

97.   The CBA and the NFLPPSA contract apply exclusively to "players" with an NFL Player Contract, not to former players who are not actively seeking employment.

98.   With 32 teams in the NFL, improper and unmitigated enforcement of the express terms of the CBA and NFLPPSA contract provides profound risk to all non-parties that are fraudulently subjected to comply with the terms therein.

99.   The CBA and the NFLPPSA contract expressly establish that that they govern "players", not former players; Mr. Bryant was not a player at the time any tests were administered, and was not, at the time, attempting to gain employment in the NFL or with any of its member clubs.

100.  The DEFENDANT's unlawful invasion of Mr. Bryant's privacy, coupled with the DEFENDANT's extreme and outrageous intrusion upon his privacy, character, reputation and earning potential is in conscious disregard for

the fact that the DEFENDANT has knowledge, and is aware, that Mr. Bryant is not employed by the NFL or any of the NFL member clubs.

101. The DEFENDANT cannot be allowed to continue to require "players" to abide by an expressly defined code of conduct in the CBA and the NFLPPSA, mandate strict construction of the CBA and the NFLPPSA, and then construe those agreements as applying to individuals that are not employees of the NFL or any of its member clubs.

102. The DEFENDANT cannot be allowed to test individuals in accordance with the NFLPPSA if those individuals are not employed by the NFL, or any of its member clubs, because their contract was terminated, and where those individuals were, or are, not presently intending to seek employment with an NFL Club.

103. The DEFENDANT takes extraordinary and illegal measures to monitor the conditions of individuals subject to the NFLPPSA which indicates a perception that individuals subject to its terms are disabled (as defined by the ADA).

**PRAYER FOR RELIEF**

Wherefore, Plaintiff Antonio Bryant, individually seeks an order and judgment against Defendant as follows:

A.   Declare that the DEFENDANT has tortiously interfered with a prospective contractual relationship for Mr. Bryant.

B.   Declare that the DEFENDANT has tortiously interfered with a prospective business relationship for Mr. Bryant.

C.      Declare that the DEFENDANT has tortiously interfered with a current contractual relationship for Mr. Bryant.

D.      Declare that the DEFENDANT has tortiously interfered with a current business Relationship for Mr. Bryant.

E.      Declare that the DEFENDANT has violated Mr. Bryant's right of privacy by intruding upon his seclusion and private affairs.

F.      Declare that the DEFENDANT has violated Mr. Bryant's right of privacy by public disclosing his private facts.

G.      Declare that the DEFENDANT has intentionally inflicted emotional distress upon Mr. Bryant.

H.      Declare that the DEFENDANT has intentionally deceived Mr. Bryant based on fraud.

I.      Declare that the DEFENDANT falsely imprisoned Mr. Bryant.

J.      Declare that the DEFENDANT cannot test Antonio Bryant under the terms of the NFLPPSA until he has either signed an NFL Player Contract or has indicated he intends to sign an NFL Player Contract.

K.      Declare that the DEFENDANT cannot utilize any drug and alcohol test results that were procured and obtained from Mr. Bryant after March 1, 2007.

L.      Declare that Mr. Bryant is not an employee of the NFL or any of its member clubs because he is not currently signed to an NFL Player Contract.

M.      Declare that the DEFENDANT cannot share Mr. Bryant's private medical information with the public.

N.     Declare that the DEFENDANT cannot make false threats to present business and contract relations.

O.     Declare that the DEFENDANT cannot make false threats to prospective business and contract relations.

P.     Declare that the DEFENDANT cannot impose discipline on Mr. Bryant for acts that occurred while Mr. Bryant was not an employee.

Q.     Order the NFL to pay damages to Mr. Bryant in an amount to be determined by jury, for the loss of future NFL salary earning potential resulting from this incident.

R.     Order the NFL to pay damages to Mr. Bryant in an amount to be determined by jury for the irreparable loss in value to his off-the-field marketability and ability to capitalize on maximal endorsement value.

S.     Order the NFL to pay damages to Mr. Bryant in an amount to be determined by jury to compensate Mr. Bryant for the irreparable harm caused to his reputation and character.

T.     Order the NFL to pay damages to Mr. Bryant in an amount to be determined by jury to compensate Mr. Bryant for the immeasurable pain and suffering resulting from the mental distress this has caused and will cause him in the future.

U.     Order Defendants to pay the reasonable value of Named Plaintiffs interim and final attorney's fees for services performed, expert witness fees, accounting fees, necessary expenses of litigation, and costs of this action.

V.    Order Defendants to pay treble damages for the frivolous, negligent and indiscriminate pursuit of this action in a public forum and for such other relief as this Court deems necessary and proper.

**Jury Demand**

PLEASE TAKE NOTICE that Mr. Bryant demands a trial by jury of the issues and claims set forth herein.

Dated this _16th Day Of October_                   Respectfully Submitted

Smith & Schaffer, P.C.                      **Peter J. Schaffer, Esq. 17042**
36 Steele St., Ste. 100                     **Smith & Schaffer, P.C.**
Denver, CO 80206


PLAINTIFFS ADDRESS

835 Mullrany Drive

Coppell Texas, 75019