**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. _____

ANTONIO BRYANT

      Plaintiff,

vs.

NATIONAL FOOTBALL LEAGUE, INC.

      and

NATIONAL FOOTBALL LEAGUE MANAGEMENT COUNCIL

      Defendants.

---

## PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER OR IN THE ALTERNATIVE A PRELIMINARY INJUNCTION

Pursuant to Federal Rule of Civil Procedure 65, named Plaintiff Antonio Bryant, by counsel, hereby move for a Temporary Restraining Order or in the alternative a Preliminary Injunction against Defendants National Football League, Inc. (NFL, Inc.) and National Football League Management Council (NFL Man. Council) (NFL, Inc. and NFL Man. Council heretofore referred to as ("NFL"), and state:

    1.      Antonio Bryant was an active football player in the National Football League until his contract was terminated by the Defendants and its member club, the San Francisco 49'ers on March 1, 2007. Upon this date, because Mr. Bryant was not obligated to perform under the terms of an NFL Player Contract and was

- 1 -

not a member of the National Football League Player's Association (NFLPA)[1]. Further at this time, the NFL's right to subject Mr. Bryant to NFL rules, regulations and policies was terminated since his contract was terminated and he was no longer an employee of the NFL or its member clubs.

2.    Accordingly, the issue in this motion for a Temporary Restraining Order, or in the alternative a Preliminary Injunction, is rooted in the NFL's arbitrary, capricious, negligent and improper imposition of the National Football League Policy and Program for Substances of Abuse (NFLPPSA), the NFL's continued attempts to mandate Mr Bryant submit to random urine analysis test and the NFL Collective Bargaining Agreement (NFL CBA), which applies only to active players in the NFL, upon individuals that are not active in the NFL and to whom they are not enforceable against.

3.    Upon having his contract terminated, Antonio Bryant did not pursue additional employment with an NFL team as evidenced by his not accepting any offers to sign an NFL Player Contract for employment in the pre-season or in regular season games.[2] Thus, Mr. Bryant was no longer an employee of the Defendants or any of its member clubs, not under contract to the Defendants or

---

[1] At this time, when his contract was terminated by the Niners, his NFLPA membership terminated as did all benefits he was receiving from the same.

[2] Antonio Bryant is an extremely talented football player, and would be an incredibly beneficial asset to any team in the NFL. In general, NFL teams invite players to training camp as a proving ground of sorts; using the pre-season to determine if that players' talent and performance satisfies the needs of the respective franchise. All active NFL players are signed to NFL Player Contracts. These contracts pay them to participate in NFL related activities and also require them to adhere to NFL policies and regulations. A player such as Antonio Bryant, who has proven that he has a skill-set that is above that of your typical player, would be a welcome addition to any training camp roster, and would certainly be retained for the remained of the season. Mr. Bryant did not pursue an NFL Player Contract for pre-season or regular season employment for 2007. Further, the NFL pre-season training camps commence the last week in July and the regular season commenced the first weekend in September of 2007

any of its member clubs and no longer a member or receiving benefits from the NFLPA.

4.      Even so, the NFL continued to mandate, coerce, force and require that Mr. Bryant submit to random urine analysis testing using fraudulent, coercive and deceptive means in that they convinced Mr. Bryant he was obligated to submit to these tests.

5.      The NFL CBA applies exclusively to active NFL players as evidenced by the express language of the governing contract:

> (a) Article II, GOVERNING AGREEMENT, Sec. 1, Conflicts:
>
> > "The Provisions of this Agreement supersede any conflicting provisions in the NFL Player Contract, the NFL Constitution and Bylaws, or any other document affecting terms and conditions of employment of NFL players, and all players, Clubs, the NFLPA, the NFL, and the Management Council will be bound hereby."[3]
>
> (b) Article I, DEFINITIONS, Sec. 2(y), Player Contract:
>
> > "'Player Contract' means a written agreement or series of such agreements executed at or about the same time between a person and an NFL Club pursuant to which such person is employed by such Club as a professional football player."[4]

6.      Further, the NFLPPSA applies exclusively to individuals under obligation to the terms of an NFL Player Contract as evidenced by the express language of the governing contract:

> (a) General Policy:

---

[3] *NFL: Collective Bargaining Agreement,* GOVERNING AGREEMENT, Art. II, Sec. 1, at 8 (Mar. 8, 2006).

[4] *NFL: Collective Bargaining Agreement,* DEFINITIONS, Art. I, Sec. 2(y), at 5 (Mar. 8, 2006).

> "This policy and its terms shall be binding on all NFL clubs and shall constitute the sole and exclusive means by which players will be tested or referred for treatment, and as to those players having problems with substances of abuse, the sole and exclusive means by which they will gain access to the benefits of this Policy."[5]

(b) Article I(c)(1)(d), Testing by Agreement:

> "An NFL club and player may agree that such player will submit to unannounced Testing during the term of said player's NFL Player Contract provided that the club has a reasonable basis for requesting such agreement."[6]

7.      As evidenced by the express language of the governing contract, the NFL CBA defines a player as an individual that is signed to an NFL Player Contract. The NFL CBA binds "players." NFL Player Contracts are the documents that make an individual a professional football "player." Antonio Bryant has not been under obligation to an NFL Player Contract since his last NFL Player Contract was terminated on March 1, 2007. Accordingly, Antonio Bryant is not a "player," not an employee or not under contract to the Defendants in any form or fashion since March 1, 2007.

8.      Further, the express language of the governing agreement, clearly defines that the NFLPPSA applies to players only "during the term of said NFL Player Contract." Even though Mr. Bryant's NFL Player Contract "term" was terminated on March 1, 2007, the NFL continues to attempt to test Mr. Bryant in accordance with the NFLPPSA.

---

[5] *National Football League Policy and Program for Substances of Abuse,* General Policy, p. 1 (May 1, 2006).
[6] *Id.* at Testing by Agreement, I(c)(1)(d), p. 8 (May 1, 2006).

9.     After March 1, 2007 the NFL and its member clubs have been on actual and constructive notice of Antonio Bryant's status as an unemployed athlete not seeking gainful employment with the NFL as evidenced, but not limited by, the following facts: (1) the NFL listed Mr. Bryant's name on numerous free agent lists; (2) Mr. Bryant has not paid union dues over this period of time; (3) Mr. Bryant has not received any union benefits over this time; (4) Mr. Bryant has not participated in any activity sponsored by the NFL; (5) Mr. Bryant has not received a check from the NFL or an NFL club; (6) Mr. Bryant does not have a contract with an NFL team; (7) Mr. Bryant had his contract terminated by the San Francisco 49'ers on March 1, 2007; and (8) the NFL has threatened teams that they will suspend Antonio Bryant if a team signs him, thus admitting he is not currently subject to NFL rules, policies and regulations as evidenced by the fact the NFL is presently unable to take disciplinary action.

10.     Even though the NFL has actual and constructive knowledge of the fact Mr. Bryant has not been obligated to an NFL Player Contract since March 1, 2007 and has actual and constructive knowledge of the fact that Mr. Bryant was, and is, not presently intending to seek employment with the NFL or an NFL club; the NFL sent threatening letters to Mr. Bryant on September 12th, September 18th and September 26th, 2007,[7] stating that he was "obligated by the terms of the National Football League Policy and Program for Substances of Abuse,"[8] that he

---

[7] Exhibits A, B and C.
[8] *Id.*

had "failed to cooperate fully with testing,"[9] and that "this type of behavior would subject [him] to discipline equivalent to a positive test."[10]

11.    This coercive and threatening behavior is anchored in the fraudulent representation by the NFL that Antonio Bryant is currently obligated to comply with the NFL CBA and the NFLPPSA.

12.    These letters created an environment of fear and angst for Mr. Bryant in that the NFL led him to believe that non-compliance would result in disciplinary action.

13.    As a result, Mr. Bryant submitted to a test that he now knows to have been procured under false pretenses.

14.    Further, although the NFL has actual and constructive knowledge of the fact Antonio Bryant is not under obligation to an NFL Player Contract and that Mr. Bryant is not actively seeking employment with an NFL team, the NFL has called potential future-employers (NFL clubs) of Mr. Bryant and threatened to suspend him should they choose to sign him.

15.    In placing these calls the NFL is sharing Mr. Bryant's confidential medical information, even though it was obtained fraudulently. Further, the NFL is fraudulently representing that they have a right to use this information against Mr. Bryant in future actions.

16.    Based on the NFL's current tortuous interference with Mr. Bryant's employment contract, tortuous interference with a business contract, tortuous interference with a prospective contract,  tortuous interference with a prospective

---

[9] *Id.*
[10] *Id.*

- 6 -

business relationship and invasion of privacy, it is inevitable that the NFL will continue to misapply the NFL CBA and the NFLPPSA with regard to Mr. Bryant unless enjoined from: (1) using the results of drug and alcohol tests procured from Mr. Bryant while he was not under obligation to an NFL Player Contract; (2) administering further drug and alcohol tests; (3) sharing Mr. Bryant's private medical information with the public; (4) threatening Mr. Bryant with discipline; and (5) threatening future-employers with the imminent suspension of Mr. Bryant.

17.    Given this evidence, Mr. Bryant is substantially likely to succeed on the merits of his action against the NFL for tortuous interference with an employment contract, tortuous interference with a business contract, tortuous interference with a prospective contract, tortuous interference with a prospective business relationship and invasion of privacy.

18.    Mr. Bryant will be imminently and irreparably harmed if this Court does not grant a temporary restraining order and preliminary injunction prohibiting the NFL from: (1) using the results of drug and alcohol tests procured from Mr. Bryant while he was not under obligation to an NFL Player Contract; (2) administering further drug and alcohol tests; (3) sharing Mr. Bryant's private medical information with the public; (4) threatening Mr. Bryant with discipline; and (5) threatening future-employers with the imminent suspension of Mr. Bryant.

19.    The likelihood of imminent irreparable harm to Mr. Bryant due to the use of drug and alcohol tests procured from Mr. Bryant while he was not under obligation to an NFL Player Contract, the procurement of drug and alcohol tests while Mr. Bryant was not under obligation to an NFL Player Contract, the sharing

of Mr. Bryant's private medical information with the public, the NFL threatening Mr. Bryant with discipline and the NFL threatening future-employers with the imminent suspension of Mr. Bryant, far outweighs the likelihood of any harm to the NFL as a result of this Court granting a temporary restraining order or preliminary injunction.

20.    The public interest will not be harmed, but will instead be served by the granting of a temporary restraining order that will require the NFL to refrain from actions that are in express violation of the governing contracts they drafted, and that allow them to impose duties on private citizens that are not under obligation to an NFL Player Contract.

21.    Mr. Bryant has provided the NFL with notice of its intention to seek a temporary restraining order and to later seek permanent injunctive relief from this Court.

22.    The Plaintiff hereby commits to provide security, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained.

WHEREFORE, for the reasons stated above and in the Verified Complaint, the Plaintiff respectfully requests that, pursuant to Federal Rule of Civil Procedure 65, this Court enter a temporary restraining order or in the alternative a preliminary injunction prohibiting the NFL from: (1) using the results of drug and alcohol tests procured from Mr. Bryant while he was not under obligation to an

NFL Player Contract; (2) administering further drug and alcohol tests; (3) sharing Mr. Bryant's private medical information with the public; (4) threatening Mr. Bryant with discipline; and (5) threatening future-employers with the imminent suspension of Mr. Bryant.

The Plaintiffs request an immediate hearing in this regard if this Motion is not granted.

Respectfully submitted this 16th day of October, 2007.

Dated this  10·16·07

Respectfully Submitted

Smith & Schaffer, P.C.
36 Steele St., Ste. 100
Denver, CO 80206

**Peter J. Schaffer, Esq. 17042**
**Smith & Schaffer, P.C.**

### Certificate of Service

I hereby certify that a copy of the forgoing was served upon The NFL, 280 Park Avenue, New York, New York. by Mail and e mail to Rapheal Prevot, the General Counsel for the NFL and the NFL Management Counsel this 16th day of October, 2007.