IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-02186-MSK-MJW

ANTONIO BRYANT,

      Plaintiff,

v.

NATIONAL FOOTBALL LEAGUE, INC. and
NATIONAL FOOTBALL LEAGUE MANAGEMENT COUNCIL,

      Defendants.

---

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
AND IN SUPPORT OF THEIR CROSS MOTION TO DISMISS THE COMPLAINT**

---

226796

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ...................................................................................................... 2

I.              The Governing CBA And Drug Policy................................................................. 3

            A.      Testing And Discipline Under The Drug Policy........................................ 4

            B.      Confidentiality Under the Drug Policy ..................................................... 5

            C.      Appeal and Grievance Procedures Under The Drug Policy....................... 6

II.            The Instant Litigation ............................................................................................ 7

ARGUMENT ......................................................................................................................... 10

I.            Plaintiff's Claims Are Preempted by the LMRA And Should Be Dismissed ....... 10

            A.      The LMRA Preempts Plaintiff's Claims .................................................11

            B.      Plaintiff Is Compelled to Resolve His Claims Under the NFL's Drug Policy and Grievance Procedures .................................................... 13

II.            Plaintiff's Request for a Preliminary Injunction is Meritless and Should be Denied................................................................................................................. 15

CONCLUSION ...................................................................................................................... 18

# TABLE OF AUTHORITIES

## CASES

*Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 221 (1985) ...............................................11, 14, 15

*Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) ................................................ 1

*Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1259 (10th Cir. 2004) ................................................................................................................................ 16, 17

*Emery Air Freight Corp. v. Local Union 295*, 786 F.2d 93, 100-01 (2d Cir. 1986).................... 17

*Hodges v. The Atchison, Topeka, and Santa Fe Railway Co.*, 728 F.2d 414, 417 (10th Cir. 1984) ................................................................................................................................................ 14

*Holmes v. Nat'l Football League*, 939 F. Supp. 517, 519 (N.D. Tex. 1996) ......................... 12, 13

*Johnson v. Beatrice Foods Co.*, 921 F.2d 1015, 1020 (10th Cir. 1990)...................................... 10
*Saunders v. Amoco Pipeline Co.*, 927 F.2d 1154, 1156 (10th Cir. 1991)...............................11, 14

*Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005)................................................ 16

*Sherwin v. Indianapolis Colts, Inc.*, 752 F. Supp. 1172 (N.D.N.Y. 1990) ............................. 12, 15

*Smith v. Houston Oilers, Inc.*, 87 F.3d 717, 720 (5th Cir. 1996)......................................11, 12, 17

*Steinbach v. Dillon Cos., Inc.*, 253 F.3d 538, 541-42 (10th Cir. 2001)....................................... 10

*Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981) .............................................................. 16

*US West Commc'ns, Inc. v. Commc'ns Workers of Am.*, No. 98-2317, 2000 U.S. Dist. LEXIS 17855, at *14 (D. Colo. July 21, 2000)................................................................................... 17

## STATUTES

29 U.S.C. § 159 ........................................................................................................................... 13

29 U.S.C. § 173(d)........................................................................................................................ 13

29 U.S.C. § 185(a)........................................................................................................................... 1

**OTHER AUTHORITIES**

5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 ................. 1

D.C.COLO.LCivR 7.1(A) ......................................................................................................... 10

Fed. R. Civ. P. 12 .................................................................................................................... 1

Fed. R. Civ. P. 65(a) ............................................................................................................... 14

iii

## <u>PRELIMINARY STATEMENT</u>

Defendants National Football League (the "NFL" or "League") and National Football League Management Council (the "Management Council") respectfully submit this memorandum of law in support of their (1) Opposition to Plaintiff's Motion for Preliminary Injunction and (2) Cross Motion to Dismiss the Complaint.  As detailed below, there is no basis for the equitable relief sought by Plaintiff.  To the contrary, the Court should dismiss Plaintiff's Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) because Plaintiff's claims are preempted by section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a) ("LMRA"), and should be resolved by the grievance procedures set forth under the governing collectively-bargained agreements.

This case concerns a labor dispute subject to exclusive and final resolution under the grievance procedures of two collectively-bargained agreements: (1) the NFL Collective Bargaining Agreement (the "CBA"), and (2) the NFL Policy and Program for Substances of Abuse (the "Drug Policy").  *See* Declaration of Daniel Reilly ("Reilly Decl."), Exs. A and B.[1] Plaintiff Antonio Bryant is a professional football player who was most recently employed by the San Francisco 49ers and who is currently seeking employment with another NFL club.  After failing a drug test and missing several other tests, Plaintiff commenced this litigation in an attempt to preclude the NFL from following the Drug Policy's express rules and procedures, which govern the process for testing NFL players for the use of prohibited substances and

---

[1] The documents attached to the Declaration of Daniel M. Reilly may be considered in this motion to dismiss without converting the motion into one for summary judgment. First, the NFL CBA and the Drug Policy are referenced in and integral to Plaintiff's Complaint. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (citation omitted).  In addition, the Court may consider Plaintiff's Motion for a Preliminary Injunction and its supporting exhibits in considering Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12.  *See* 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (noting that a court considering a Rule 12(b)(6) motion "is not limited to the four corners of the complaint" . . . but can consider "matters incorporated

specify the discipline to be imposed for violations of the Drug Policy.  In particular, Plaintiff

seeks to enjoin the NFL from suspending him because of his failed drug test and other violations

of the Policy.  Further, Plaintiff is seeking to use this litigation as a means to bypass the

grievance procedures under the Drug Policy, which expressly govern such circumstances—and

by which the NFL and its players, including Plaintiff, are bound.

This litigation, accordingly, should be dismissed.  Plaintiff should not be permitted to

bypass the dispute resolution procedures to which he is subject, and thus thwart federal law and

policy.  The LMRA, in addition to preempting Plaintiff's claims, requires Plaintiff to resolve his

claims through the grievance procedures set forth under the Drug Policy and CBA.  Defendants

therefore respectfully request an Order from this Court, dismissing the Complaint and denying

Plaintiff's motion for a preliminary injunction.

## <u>STATEMENT OF FACTS</u>

Plaintiff Antonio Bryant is a professional football player who was most recently

employed by the San Francisco 49ers until his contract was terminated earlier this year.  (Doc. 1

at ¶ 11.)  He is currently a "free agent" seeking a new contract with another NFL team.  (*See*

Doc. 14 at ¶¶ 10, 23.)  In this action, Plaintiff complains that Defendants have interfered with his

ability to obtain NFL employment by subjecting him to a one-year suspension under the Drug

Policy.  (*See* Doc. 1 at ¶ 25.)  The suspension is based upon Plaintiff's failed drug test and his

refusal to submit to additional testing during a period in which he was a free agent not under

contract with a particular NFL club.  (*See* Doc. 14 at Exs. E-G.)  Plaintiff claims that, by their

terms, the NFL CBA and the Drug Policy apply only to players who are under contract, and

therefore it was unlawful for Defendants to require him to submit to testing while he was a free

_____

by reference or integral to the claim . . . matters of public record, orders, items appearing in the record of the case,

226796

agent or to impose any discipline upon him resulting from such tests.  (Doc. 1 at ¶¶ 13, 15-16, 17-20.)  Plaintiff further alleges that it was improper for Defendants to inform any NFL club interested in signing him that he would be subject to a suspension upon his return to play.  (*Id.* at ¶¶ 25-26.)

## I.     The Governing CBA And Drug Policy

The terms and conditions of employment applicable to all NFL players are set forth in a comprehensive Collective Bargaining Agreement ("CBA") that has been negotiated by the National Football League Players Association ("NFLPA"), the sole and exclusive collective bargaining representative of NFL players, and the NFL Management Council, the sole and exclusive bargaining representative of the member clubs of the NFL.  (*See* Reilly Decl., Ex. A.) The CBA applies specifically to all professional football players currently employed by the member clubs and "[a]ll professional football players who have been previously employed by a member club of the National Football League who are seeking employment with an NFL Club." (*Id.* at 3 ("Preamble").)  Indeed, the CBA contains detailed provisions applicable to such "free agent" players.  (*See, e.g.*, *id.* at 57-67 (Art. XIX "Veteran Free Agency").)

As with most collectively-bargained agreements, the NFL CBA sets forth mandatory and exclusive procedures for the resolution of any disputes arising under it.  The CBA provides:

> Any dispute (hereinafter referred to as a "grievance") arising after the execution of this Agreement and involving the interpretation of, application of, or compliance with, any provision of this Agreement . . . will be resolved exclusively in accordance with the procedure set forth in this Article . . . .

(*Id.* at 23 (Article IX "Non-Injury Grievance").)

---

and exhibits attached to the complaint whose authenticity is unquestioned.")

The Drug Policy was negotiated by the NFLPA and the Management Council in accordance with the CBA.  (*See* Reilly Decl., Ex. A at 198, Ex. B at 1.)  It is a comprehensive agreement designed to "detect and deter substance abuse . . . and to offer programs of intervention, rehabilitation, and support to players who have substance abuse problems."  (*Id.*) While "the primary purpose of this policy is to assist players who misuse substances of abuse," the Policy also outlines a detailed discipline program and explicitly states that "a player will be held responsible for whatever goes into his body."  (Reilly Decl., Ex. B at 2.)  Furthermore, the Drug Policy is "binding on all NFL clubs and shall constitute the sole and exclusive means by which players will be tested or referred to treatment, and as to those players having problems with substances of abuse, the sole and exclusive means by which they will gain access to the benefits" of the Drug Policy.  (*Id.* at 1.)

## A.    Testing And Discipline Under The Drug Policy

Drug testing is conducted in accordance with the detailed procedures set forth in the Drug Policy.  (*Id.* at 6-10.)  Discipline for positive drug tests is imposed according to the stage of the drug program in which a player is situated.  The intervention program under the Drug Policy consists of three stages.  Players enter Stage One of the intervention program through self-referral, behavioral referral or through a positive test for drugs.  (*Id.* at 11.)  After a preliminary evaluation and a determination as to whether a treatment plan is appropriate, a player may either be dismissed from the intervention program or advanced to Stage Two.  (*Id.* at 13-14.)  In Stage Two, players are subject to unannounced drug testing.  (*Id.* at 15.)  A player who tests positive for drugs, or who fails to cooperate in testing, during Stage Two is subject to discipline, consisting of either a fine of four weeks' regular season pay or a four-game suspension without pay.  (*Id.* at 16.)  If a player tests positive (or fails to cooperate by missing a test without excuse) a second time while in Stage Two, he is subject to a four-game or six-game suspension without pay.  (*Id.*)

4

Players who test positive twice while in Stage Two automatically advance to Stage Three of the program.  (*Id.* at 17.)  A player who has a positive drug test while in Stage Three is subject to suspension from the NFL for a minimum of one calendar year.  (*Id.* at 18.)

In accordance with the CBA, the terms of the Drug Policy do not cease upon the expiration of the player's NFL Player Contract but rather continue to apply to all free agent players.  In particular, the NFLPA and the NFL Management Council have specifically agreed that players with expired contracts nonetheless remain eligible for all of the Program's benefits, such as counseling and treatment, and are obligated to submit to continued testing.  The Drug Policy therefore applies to "all present and future employee players in the NFL" as described in the preamble to the CBA, and also explicitly applies "to all players who have not formally retired from the NFL."  (*Id.* at 1.)[2]

### B.   Confidentiality Under the Drug Policy

The Drug Policy sets forth detailed provisions mandating that information acquired in accordance with the Policy shall remain confidential.  (*Id.* at 4-5.)  An NFL club that "has contacted a restricted or unrestricted free agent or that player's [agent] . . . and is considering making an offer to and/or signing such player" . . . may be informed if the player is subject to suspension for further violations of the Drug Policy and/or whether the player has already failed to comply with the Drug Policy and could be suspended.  (*Id.* at 5.)  Club personnel who receive this information can disclose it only to other individuals participating in the signing decision, and all Club personnel receiving the information are immediately bound by the Drug Policy's confidentiality provisions.  (*Id.*)  This restriction is consistent with the Policy's general

---

[2] Plaintiff concedes that, although he prepared a draft retirement letter, he never submitted it.  Had the letter been submitted, testing under the Drug Program would have ceased, and there would have been no basis for the imposition of discipline.

226796

requirement that everyone involved in the administration of the Drug Policy must "take reasonable steps to protect the confidentiality of information acquired in accordance with the provisions" of the Drug Policy and shall disclose information from the program only "on a need to know basis and only in accordance with the terms" of the Drug Policy.  (*Id*. at 4-5.)  The Policy also authorizes the NFL Commissioner to impose discipline upon "any interested party" that violates these confidentiality provisions.  (*Id.* at 6.)

### C.   Appeal and Grievance Procedures Under The Drug Policy

The Drug Policy contains the exclusive procedures by which a player may appeal the imposition of a fine or suspension ("discipline") or present a grievance over any other aspect of the Drug Policy.  (*Id.* at 24-26.)  Specifically, the Policy provides:

> Any dispute concerning the application, interpretation or administration of this Policy (hereafter "grievance") shall be resolved exclusively and finally through the following procedures.

(*Id.* at 24.)

A player subject to discipline for violation of the terms of the Drug Policy may appeal such discipline directly to the Commissioner within five days of receiving notice that he is subject to discipline.  (*Id.* at 24.)  Discipline which is timely appealed does not take effect until completion of a player's appeal.  (*Id.* at 25.)  A player may also present grievances over any aspect of the Drug Policy, other than discipline, by presenting such grievance to the NFLPA within five days of when he knew or should have known of the grievance.  (*Id.* at 24.)

The final and exclusive procedures for the conduct of the appeal, including the hearing, discovery, evidence and witnesses are set forth in the Drug Policy.  (*Id.* at 24-26.)  The Commissioner sets a time and place for a hearing, at which either he or his designee presides. (*Id.* at 24.)  At the hearing, the player may present relevant evidence or testimony in support of his appeal.  (*Id.*)  The player is entitled to access the information upon which the decision to

6

impose discipline was based. (*Id.* at 25.) In addition, the player may, under certain circumstances, present the testimony of a professional if that professional is the only one who has substantial knowledge of the information to which he will testify. (*Id.*) And at least 96 hours prior to the hearing, each side must present to the other a list of witnesses who are to testify at the appeal hearing and copies of the evidentiary documents they intend to introduce at the hearing. (*Id.* at 26.) Finally, the NFL Commissioner renders a decision on the appeal, which is final and binding on the NFL and its players. The Drug Policy states: "Within a reasonable time after the hearing, the Commissioner will issue a written decision which will constitute a full, final and complete disposition of the appeal and which will be binding on all parties." *Id.* at 26.

## II.      The Instant Litigation

Rather than follow the mandatory, exclusive grievance procedures set forth in the CBA and Drug Policy, Plaintiff commenced this litigation on October 17, 2007. Plaintiff alleges that Defendants improperly "mandate[d], force[d], manipulate[d], and coerce[d]" him into submitting to random urine analysis tests for substance abuse because Plaintiff "is not presently a player, an employee of the NFL or any NFL franchise, or a member of the [NFLPA]." (Doc. 1 at ¶¶ 11, 15.) Plaintiff's Complaint includes ten counts, ranging from tortious interference with contractual relations, to invasion of privacy, to intentional infliction of emotional distress.[3]

Specifically, in his Complaint, Plaintiff alleges that, upon the termination of his contract by the 49ers on March 1, 2007, he "did not pursue additional employment with an NFL team . . .

---

[3] Specifically, Plaintiff claims: (1) tortious interference with a prospective contractual relationship, (2) tortious interference with a prospective business relationship, (3) tortious interference with a contractual relationship, (4) tortious interference with a prospective business relationship, (5) violation of right of privacy: intrusion upon seclusion and private affairs, (6) violation of right of privacy: public disclosure of private facts, (7) intentional infliction of emotional distress, (8) deceit based on fraud, (9) false imprisonment, and (10) declaratory judgment. (Doc. 1 at ¶¶ 28-103.) As this Court has already noted, the Complaint contains two different claims entitled "Sixth Claim for Relief," and Defendants, like the Court, therefore disregard Plaintiff's numbering of the claims. (*See id.*; Doc. 6 at n.1.)

7

." (*Id.* at ¶ 14.)  However, in his motion for preliminary injunction, Plaintiff claims that he did, in fact, seek employment with "any one of the remaining league member clubs" following his release from the 49ers.  (Doc. 14 at ¶ 11.)  Plaintiff alleges that he "ceased seeking employment with the NFL or any of its member clubs" after he was not offered a contract by the Tampa Bay Buccaneers in June 2007.  (*Id.* at ¶¶ 11-13.)  As a result, Plaintiff's name was not included on the list of "free agent" players sent by his agent to NFL teams, and his agent further "drafted and emailed the documents and paperwork to Mr. Bryant that were necessary for Mr. Bryant to make his retirement from the NFL official."  (*Id.* at ¶ 15.)  This "paperwork" included an unsigned letter to the NFL Commissioner stating that "I hereby retire from the National Football League as of this day, October 25, 2007."  (*Id.* at Ex. D.)[4]

Plaintiff alleges that his "desire to play professional football was rekindled" in the "second week of October [2007]" when his agent was contacted by the Dallas Cowboys about Plaintiff's interest in playing for the Club.  (*Id.* at ¶ 17.)  Plaintiff alleges that his agent negotiated a contract offer with the Cowboys that was revoked after the club learned from Defendant NFL Management Council that Plaintiff was facing a one-year suspension as a result of his violations of the Drug Policy.  (*Id.* at ¶ 18.)  These violations included a failed drug test and several unexcused missed tests by Plaintiff that occurred after August 1, 2007.  (*Id.* at ¶ 19, Exs. E, F, G.) Plaintiff further claims that, after the Cowboys revoked the contract offer to Plaintiff, the Tampa Bay Buccaneers inquired about his availability, but the club "removed themselves from contract discussions" after learning from the NFL that Plaintiff was facing a one-year suspension under the Drug Policy.  (*Id.* at ¶ 21.)

---

[4] The letter was never submitted to the NFL except as an attachment to Plaintiff's Motion for a Preliminary Injunction.

Simultaneous with the filing of his complaint, Plaintiff filed a motion for temporary restraining order ("TRO") or, in the alternative, a preliminary injunction, asking the court to prohibit defendant from (1) using the results of the drug and alcohol tests procured "while he was not under obligation to an NFL player contract;" (2) administering further tests; (3) disclosing Plaintiff's medical information; (4) threatening Plaintiff with discipline; and (5) threatening future employers with Plaintiff's suspension. (Doc. 2 at 8-9.) On October 18, this Court rejected Plaintiff's motion for a TRO, holding that Plaintiff did not show that immediate or irreparable injury would result before the Defendant could be heard in opposition. (Doc. 6 at 4.) In response to Plaintiff's alternative request for a motion for preliminary injunction, the Court ordered Plaintiff to serve the Complaint and motion for preliminary injunction within 30 days. (*Id*. at 5.)[5]

Plaintiff served another motion for preliminary injunction on October 25, supplemented the motion the next day, and filed yet another motion for preliminary injunction on November 7. (*See* Docs. 7-8, 14.) In the latest version of his motion,[6] Plaintiff asks the Court to prohibit Defendant from (1) using results from tests given to Plaintiff "while he was not under obligation to an NFL Player Contract and not seeking employment with the NFL or any of its member clubs;" (2) administering further tests while "he is not under obligation to an NFL Player Contract and not seeking employment with the NFL or any of its member clubs;" (3) disclosing medical information, including test results obtained when "he was not under obligation to an NFL Player Contract and not seeking employment with the NFL or any of its member clubs;" (4)

---

[5] Plaintiff's Complaint and motion for TRO were not properly served on Defendants. In order to expedite resolution of this dispute, Defendants agreed to consider service of Plaintiff's Complaint and accompanying motion perfected on October 31, 2007. (Doc. 15.)

threatening Plaintiff with discipline for tests "missed, administered, or procured" while he "was not under obligation to an NFL Player Contract and not seeking employment with the NFL or any of its member clubs;" (5) threatening future employers with his suspension; and (6) imposing discipline against him for tests "missed, administered, or procured" when he "was not under obligation to an NFL Player Contract and not seeking employment with the NFL or any of its member clubs." (Doc. 14 at 19.)

Proceeding simultaneously with the instant litigation, and pursuant to the exclusive procedures set forth in the Drug Policy, a grievance hearing for Plaintiff's Drug Policy violations was scheduled for November 7, 2007. (*See id.* at Ex. I to Plaintiff's Affidavit.)[7] At Plaintiff's request, the hearing has been rescheduled for November 29, 2007. (Doc. 14 at ¶ 23.)[8]

## ARGUMENT

### I.   Plaintiff's Claims Are Preempted by the LMRA And Should Be Dismissed

Plaintiff's Complaint should be dismissed under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) because all of his claims are preempted under the LMRA. Even accepting all of Plaintiff's factual allegations as true, Plaintiff is not entitled to judicial relief because his claims must be resolved under the CBA's and Drug Policy's mandatory and exclusive grievance procedures. *See, e.g.*, *Steinbach v. Dillon Cos., Inc.*, 253 F.3d 538, 541-42 (10th Cir. 2001) (holding employee's state law claims preempted by section 301 of the LMRA because resolution of claims required consideration of collective bargaining agreement); *Johnson v. Beatrice Foods*

---

[6] In order to expedite ruling on this issue, this motion responds to plaintiff's refiled, and most complete, motion for a preliminary injunction and reserves any and all rights regarding any differences between plaintiff's initial motion and supplement, (Docs. 7-8), and plaintiff's re-filed motion, (Doc. 14).

[7] Upon receiving notice of the upcoming hearing, Plaintiff filed a motion to expedite hearing on his motion. (Doc. 12.) Plaintiff's motion was denied, *inter alia*, for failure to comply with D.C.COLO.LCivR 7.1(A). (Doc. 13.)

[8] Plaintiff's motion states that the hearing is scheduled for November 28, 2007, but the correct date is November 29, 2007.

226796

*Co.*, 921 F.2d 1015, 1020 (10th Cir. 1990) (explaining that plaintiff's complaint regarding manner in which discipline was carried out was preempted by section 301 because resolution required interpretation of collective bargaining agreement).  *See also Smith v. Houston Oilers, Inc.*, 87 F.3d 717, 720-21 (5th Cir. 1996) (affirming dismissal of NFL players' claims as preempted by the LMRA where the claims were dependent on an analysis of the CBA).

> A.    **The LMRA Preempts Plaintiff's Claims**

The claims in Plaintiff's Complaint, however conceived or characterized, are preempted by the LMRA because they relate directly to conduct regulated by the express terms of the NFL's collectively-bargained Drug Policy.  Where, as here, resolution of a state law claim depends on an interpretation of a collective bargaining agreement, the claim is preempted under the LMRA. *See Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 221 (1985); *Saunders v. Amoco Pipeline Co.*, 927 F.2d 1154, 1156 (10th Cir. 1991) (dismissing plaintiff's claims "because any determination of defendant's liability under the state law claims would, thus, inevitably involve interpretation of the collective bargaining agreement, section 301 preempt[s] these claims").

Several courts have applied federal preemption under section 301 of the LMRA to other NFL player claims relating to the Drug Policy or the CBA.  In *Smith v. Houston Oilers, Inc.*, 87 F.3d 717, 720-21 (5th Cir. 1996), for example, the Fifth Circuit held an NFL player's claims for intentional infliction of emotional distress should be dismissed because they were inextricably intertwined with the CBA and thus preempted by the LMRA.  In *Smith*, plaintiffs alleged that an NFL Club required their participation in an "abusive" rehabilitation program.  *Id.* at 718.  The CBA, however, authorized NFL teams to require players to participate in rehabilitation programs. *Id.* at 720.  Thus, any analysis of the plaintiff's claims was "too dependent on an analysis of the CBA" to escape preemption.  *See id.* at 720-21; *see also Sherwin v. Indianapolis Colts, Inc.*, 752

F. Supp. 1172 (N.D.N.Y. 1990) (dismissing former NFL player's tort claims for, *inter alia*, fraud and intentional infliction of emotional distress, as preempted under section 301.)

Indeed, section 301 preemption has been applied in a case presenting remarkably similar facts to the case at hand.  In *Holmes v. Nat'l Football League*, 939 F. Supp. 517, 519 (N.D. Tex. 1996), a professional football player sued the NFL based upon his involuntary enrollment in the NFL's drug program, a precursor to the Drug Policy.  The plaintiff alleged the Detroit Lions had misled him into submitting to a drug test while he was a free agent by knowingly misrepresenting that the drug test was a condition of possible employment.  *Id.* at 520.  The plaintiff alleged, *inter alia*, fraudulent inducement, intentional infliction of emotional distress and invasion of privacy "arising from the administration, use, and consequences of the drug test conducted by the Lions." *Id.* at 525.  The court found that the LMRA preempted plaintiff's state law claims relating to the drug program:

> It is pellucid that the underlying labor dispute concerning the propriety of Holmes' enrollment in the Drug Program cannot be separated from his [state law claims] . . . . The touchstone of each of Holmes' state-law tort claims is that he was misled into submitting to the [drug] test.  *To resolve these claims the court must perforce analyze the CBA and the collectively-bargained Drug Program to ascertain whether the Lions defrauded Holmes, or instead had the right to request that he submit to a pre-employment test.*

*Id.* at 527 (emphasis added).

Here, as in *Holmes*, all of Plaintiff's claims necessarily require the interpretation of the NFL CBA and Drug Policy.  Indeed, Plaintiff himself alleges that the Complaint "is rooted" in Defendants' alleged "arbitrary, capricious, negligent, and improper imposition of the [Drug Policy] and the CBA . . . ."  (Doc. 1 at ¶ 13.)  Moreover, it is apparent from the face of the Complaint that each "count" is based upon allegations that depend upon Plaintiff's *interpretation* of the CBA and the Drug Policy, particularly his claim that these collectively-bargained agreements "appl[y] only to active 'players'."  (*Id.*)

Thus, Plaintiff's fundamental allegation that he was improperly subjected to testing under the Drug Policy during a period that he was not under contract to an NFL club cannot be resolved without interpreting the provisions in the NFL CBA and the Drug Policy that state otherwise.  (*See* Reilly Decl., Ex. A at 3, Ex. B at 1.)  Similarly, Plaintiff's claim that Defendants improperly suspended him for a year and interfered with his ability to obtain a new NFL Player Contract by informing prospective NFL club employers that he is subject to discipline requires consideration of the specific provisions of the Drug Policy, including the detailed sections regarding discipline and confidentiality that specifically authorize Defendants to do exactly that. (*See* Reilly Decl., Ex. B at 4-6.)  For the same reason, Plaintiff's allegations regarding Defendant's alleged disclosure of his confidential medical information require consideration of the Drug Policy provisions regarding confidentiality of such Program information.  (*See id.*)  Because all of these claims turn on an interpretation of the collectively-bargained agreements, they are all preempted.  *See, e.g.*, *Allis-Chalmers*, 471 U.S. at 220; *Saunders*, 927 F.2d at 1156.[9]

**B.      Plaintiff Is Compelled to Resolve His Claims Under the NFL's Drug Policy and Grievance Procedures**

Plaintiff must resolve his dispute with the NFL through the procedures set forth in the Drug Policy and CBA.  Where, as here, parties have agreed to resolve disputes in accordance

---

[9] Plaintiff's claim that he is not covered by the CBA and Drug Policy because is not a union member is baseless as a matter of law.  Under Section 9(a) of the LMRA, individuals selected as bargaining representatives "by the majority of the employees in a unit . . . shall be the *exclusive* representatives of *all* the employees in such unit for the purposes of collective bargaining with respect to rates of pay, wages, hours of employment, or other conditions of employment."  29 U.S.C. § 159 (emphasis added).   As a result, the LMRA preemption doctrine applies to any member of the bargaining unit covered by a collective bargaining agreement, regardless of the employee's union membership.  *See, e.g.*, *Saunders v. AMOCO Pipeline Co.*, 927 F.2d 1154, 1156 (10th Cir. 1991) (finding non-union member's claims were preempted because they required interpretation of the collective bargaining agreement, and "[u]nion membership . . . is irrelevant to the application of a collective bargaining agreement"); *Hodges v. The Atchison, Topeka, and Santa Fe Railway Co.*, 728 F.2d 414, 417 (10th Cir. 1984) (explaining the plaintiff's "employment in the craft governed by the applicable collective bargaining agreement makes him subject to the terms and conditions . . . in the agreement").  As explained above, the NFL CBA specifically defines the "bargaining unit" to include free agent players such as Plaintiff here.

with procedures set forth in a collectively-bargained agreement, the preemptive effect of section 301 precludes parties from bringing suit over disputes arising under that agreement.  *See Allis-Chalmers v. Lueck*, 471 U.S. 202, 219 (1985); see also LMRA, 29 U.S.C. § 173(d) ("Final adjustment by a method agreed upon by the parties is hereby declared to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective-bargaining agreement"); *Sherwin*, 752 F. Supp. at 1177 ("It is settled in the field of federal labor law that an employee must at least attempt to exhaust the grievance and arbitration procedures established by the collective bargaining agreement before bringing suit.") (citation omitted).  As the Supreme Court stated in *Allis-Chalmers v. Lueck*:

> A rule that permitted an individual to sidestep available grievance procedures would cause arbitration to lose most of its effectiveness, as well as eviscerate a central tenet of federal labor-contract law under § 301 that it is the arbitrator, not the court, who has the responsibility to interpret the labor contract in the first instance.

471 U.S. 202, 220 (1985) (noting that the complaint should have been dismissed for failure to make use of the grievance procedures in the collective bargaining agreement).  *See also Sherwin*, 752 F. Supp. at 1177 (dismissing NFL player's claims as preempted under the LMRA and subject to arbitration under the collective bargaining agreement).

Plaintiff's claims should be dismissed because he blatantly ignored the grievance procedures set forth in the CBA and the Drug Policy.  Both the CBA and the Drug Policy provide that any disputes involving their interpretation or application must be resolved exclusively in accordance with the procedures they set forth.  (*See* Reilly Decl., Ex. A at 23, Ex. B at 6, 24.) Rather than follow these procedures, Plaintiff immediately filed suit in federal court, and his complaint should be dismissed on that basis alone.  *See, e.g.*, *Sherwin*, 752 F. Supp. at 1178

(holding that questions about the scope of the Drug Policy's disclosure provisions are "precisely the type of question which must be reserved for the arbitrator").

## II.    Plaintiff's Request for a Preliminary Injunction is Meritless and Should be Denied

It is well-established in the Tenth Circuit that a preliminary injunction can issue under Fed. R. Civ. P. 65(a) only when the moving party can satisfy four conditions:  1) he or she will suffer irreparable injury unless the injunction issues; 2) the threatened injury outweighs whatever damage the proposed injunction may cause the opposing party; 3) the injunction would not be adverse to the public interest; and 4) there is a substantial likelihood of success on the merits. *See, e.g.*, *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005).  Because "a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal."  *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1259 (10th Cir. 2004) (internal citation omitted).  The limited purpose of a preliminary injunction "is merely to preserve the relative position of the parties until a trial on the merits can be held" and therefore preliminary injunctions that alter the status quo are "specifically disfavored."  *Schrier*, 427 F.3d at 1258 (citing *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981)).

In evaluating these four factors, the most important consideration is whether plaintiff can establish a probability of irreparable harm.  *Dominion Video Satellite,* 356 F.3d at 1259.  Courts have found that requiring a party to abide by the terms of a collectively-bargained agreement is unlikely to create irreparable harm.  *See, e.g.*, *US West Commc'ns, Inc. v. Commc'ns Workers of Am.*, No. 98-2317, 2000 U.S. Dist. LEXIS 17855, at *14 (D. Colo. July 21, 2000) (holding that requiring "all persons covered by the CBA . . . to comply with the CBA is not a legally cognizable harm.")  Similarly, requiring a party to submit to arbitration is unlikely to create irreparable harm sufficient to justify a preliminary injunction.  *See Emery Air Freight Corp. v.*

15

*Local Union 295*, 786 F.2d 93, 100-01 (2d Cir. 1986). A court is particularly unlikely to find irreparable harm where, as here, a party can easily avoid the application of the CBA and the Drug Policy merely by relinquishing his search for NFL employment. *See Smith v. Houston Oilers, Inc.*, 87 F.3d 717, 720 (5th Cir. 1996) (rejecting plaintiff NFL players' claims that the NFL unlawfully required their participation in an abusive rehabilitation program because "the abuse complained-of by the players occurred only because they wanted to remain with a team that did not want them . . . [t]he players could have avoided the abuse by refusing to participate").

Plaintiff cannot establish that he would be subject to irreparable harm without his requested injunction. He does not cite any cases in support of his request for an injunction—indeed he cites no law at all in his request for extraordinary relief. Furthermore, as in his motion for temporary restraining order, plaintiff has failed to establish he is at risk of suffering any additional injury. (Doc. 6 at 4-5.) Plaintiff has not established that he is likely to suffer any injuries from submitting to additional drug tests, nor has he claimed that the NFL plans to disseminate his test results to other teams. (*See id.*) In sum, Plaintiff has not shown he is at risk of injury without an injunction.

Even assuming Plaintiff could establish irreparable harm, he cannot establish that the threatened damage to him outweighs the damage the injunction would cause to Defendant, that the injunction would not be adverse to the public interest, and that there is a substantial likelihood of success on the merits. The potential danger that would be incurred by effectively eradicating drug testing requirements for a professional athlete seeking to continue his employment with the NFL would certainly outweigh the harm in requiring plaintiff to abide by collectively-bargained drug testing provisions. Furthermore, the important public policy

16

interests served in both promoting collectively bargained agreements generally, and drug provisions specifically, are not served by granting plaintiff's request for an injunction.  Finally, as noted above, plaintiff's motion should be dismissed as preempted, and he is therefore unlikely to establish a substantial likelihood of success on the merits of his claim.

Plaintiff cannot meet any of the four requirements for the issuance of a preliminary injunction, and his motion should therefore be denied.

226796

**CONCLUSION**

For the foregoing reasons, the Defendants respectfully request that this court deny

Plaintiff's request for a preliminary injunction, dismiss Plaintiff's claims, and compel him to

utilize the exclusive grievance procedures required under the CBA and Drug Policy.


Dated:  November 20, 2007

                                          Respectfully submitted,

                                          s/ Jason M. Lynch_____
                                          Jason M. Lynch
                                          jlynch@litigationcolorado.com
                                          Daniel M. Reilly
                                          Larry S. Pozner
                                          REILLY POZNER & CONNELLY LLP
                                          511 Sixteenth Street, Ste. 700
                                          Denver, Colorado  80202
                                          Telephone:  303-893-6100
                                          Facsimile:  303-893-6110

                                          and

                                          Daniel L. Nash
                                          dnash@AKINGUMP.com
                                          (Admission to this Court Pending)
                                          AKIN GUMP STRAUSS HAUER
                                          & FELD LLP
                                          1333 New Hampshire Avenue, NW
                                          Washington, DC  20036
                                          Telephone:  202-887-4067
                                          Facsimile:   202-887-4288

                                          ATTORNEYS FOR DEFENDANTS

18

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of November, 2007, a true and correct copy of the foregoing **DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND IN SUPPORT OF THEIR CROSS MOTION TO DISMISS THE COMPLAINT** was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's ECF system.

Peter J. Schaffer
SMITH & SCHAFFER PC
36 Steele Street, Suite 100
Denver, CO  80206
peter@apse.net

_s/ Jason M. Lynch_

226796